**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**BLAKE J. L.,**[1]                         **3:20-cv-00304-BR**

        **Plaintiff,**                **OPINION AND ORDER**

**v.**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

**LISA R.J. Porter**
JP Law P.C.
5200 S.W. Meadows Rd., Ste. 150
Lake Oswego, OR  97035
(503) 245-6309

        Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

───────────────────────

     [1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.  Where applicable, this Court uses the same designation for the nongovernmental party's immediate family member.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**JEFFREY E. STAPLES**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3706

      Attorneys for Defendant

**BROWN, Senior Judge.**

      Plaintiff Blake J. L. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

**I.    Prior Proceedings**

      On February 18, 2014, Plaintiff protectively filed his

application for DIB and SSI benefits.  Tr. 188-200.[2]  Plaintiff

alleged a disability onset date of February 28, 2013.  Tr. 192.

Plaintiff's applications were denied initially and on

reconsideration.  An Administrative Law Judge (ALJ) held a

hearing on April 20, 2016.  Tr. 40-75.  Plaintiff and a

Vocational Expert (VE) testified at the hearing.  Plaintiff was

represented by an attorney.

On June 3, 2016, the ALJ issued an opinion in which he

found Plaintiff was not disabled and, therefore, was not

entitled to benefits.  Tr. 22-34.  Plaintiff requested review by

the Appeals Council.  On August 25, 2017, the Appeals Council

denied Plaintiff's request to review the ALJ's decision, and the

ALJ's decision became the final decision of the Commissioner.

Tr. 1-3.

On October 17, 2017, Plaintiff filed a Complaint in this

Court (Case No. 3:17-cv-01647-YY) seeking review of the

Commissioner's decision.  On January 4, 2019, Magistrate Judge

Youlee Yim You issued Findings and Recommendations in which she

found the ALJ erred when he failed to provide legally sufficient

---

[2] Citations to the official Transcript of Record (#10)
filed by the Commissioner on July 6, 2020, are referred to as
"Tr."

reasons for discounting the testimony of Plaintiff; the opinion

of Joel Julian, M.D., Plaintiff's treating physician; and the

testimony of lay witnesses.  Magistrate Judge You found the ALJ

also erred when he failed to incorporate all of Plaintiff's

limitations in his assessment of Plaintiff's RFC at Step Five,

and Magistrate Judge You recommended reversal of the ALJ's

decision and remand of the case for further administrative

proceedings to (1) provide legally sufficient reasons for

rejecting Plaintiff's testimony; (2) conduct a psychological

mental-health consultation and *de novo* review of the medical

opinion evidence; (3) provide legally sufficient reasons for

rejecting the lay-witness testimony; and (4) conduct any further

necessary proceedings.  Tr. 754-82.  On January 22, 2019,

District Judge Michael Simon adopted the Magistrate Judge's

Findings and Recommendations, reversed the decision of the ALJ,

and remanded the case for further administrative proceedings.

Tr. 751-53.

On February 27, 2019, the Appeals Council remanded the case

to the ALJ for further proceedings as directed by the district

court.  Tr. 785.

**II.  Current Proceedings**

Following remand by the Appeals Council the ALJ held a

4 - OPINION AND ORDER

hearing on September 26, 2019.  Tr. 693-725.  Plaintiff and a VE
testified at the hearing.  Plaintiff was represented by an
attorney.  At the hearing Plaintiff requested a closed period of
benefits from February 28, 2013, his alleged disability onset
date, to August 27, 2018, when Plaintiff returned to substantial
gainful work activity.  Tr. 699.

On November 7, 2019, the ALJ issued an opinion in which he
found Plaintiff is not disabled for the closed period from
February 28, 2013, to August 27, 2018, and, therefore, is not
entitled to benefits.  Tr. 669-87.

The record does not reflect and the parties do not indicate
whether there was any subsequent disposition by the Appeals
Council, and, therefore, the Court determines the ALJ's decision
became the final decision of the Commissioner.  20 C.F.R.
§§ 404.984(a), 416.1484(a).

On February 24, 2020, Plaintiff filed a Complaint in this
Court seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on January 12, 1983.  Tr. 686.
Plaintiff was 30 years old on his alleged disability onset date.
Tr. 686.  Plaintiff has a high-school education and received a

bachelor's degree from Portland State University in 2018.
Tr. 686, 700.  Plaintiff has past relevant work experience as a
restaurant manager and a sales clerk.  Tr. 685.  Plaintiff began
working as a personnel clerk in August 2018.  Tr. 685.

Plaintiff alleges disability due to vasovagal syncope,
bipolar disorder, chronic migraines, depression, anxiety,
Obsessive-Compulsive Disorder (OCD), and social anxiety.
Tr. 102.

Except as noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 677-84.

## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110
(9th Cir. 2012).  To meet this burden a claimant must
demonstrate his inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."  42
U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when

there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.,* 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than

one rational interpretation, the court must uphold the
Commissioner's findings if they are supported by inferences
reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d
1047, 1051 (9th Cir. 2012). The court may not substitute its
judgment for that of the Commissioner. *Widmark v. Barnhart*, 454
F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity (SGA). 20 C.F.R. §§ 404.1520(a)(4)(i),
416.920(a)(4)(i). *See also Keyser v. Comm'r of Soc. Sec.*, 648
F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments. 20 C.F.R.
§§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also
Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so

severe as to preclude substantial gainful activity.  20 C.F.R.
§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*,
648 F.3d at 724.  The criteria for the listed impairments, known
as Listings, are enumerated in 20 C.F.R. part 404, subpart P,
appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations.  20 C.F.R.
§§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling
(SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a
day, for 5 days a week, or an equivalent schedule."  SSR 96-8p,
at *1.  In other words, the Social Security Act does not require
complete incapacity to be disabled.  *Taylor v. Comm'r of Soc.
Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair
v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work he has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv),
416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine

whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity from February 18, 2014, Plaintiff's alleged disability onset date, to the end of the closed period on August 27, 2018.  Tr. 672.

At Step Two the ALJ found Plaintiff has the severe impairments of obesity, a lumbar spine condition, affective disorder with bipolar features, generalized anxiety disorder, borderline personality disorder, and cannabis abuse.  Tr. 672.

10 - OPINION AND ORDER

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 674.  The ALJ found Plaintiff has the RFC to perform medium work with the following limitations:  cannot climb ladders, ropes, and scaffolds; can only perform simple, routine tasks; can only have occasional, superficial contact with the general public and with coworkers; and would work best in jobs that do not require close collaboration with coworkers. Tr. 675.

At Step Four the ALJ concluded Plaintiff is unable to perform his past relevant work.  Tr. 685.

At Step Five the ALJ found Plaintiff can perform other jobs that exist in the national economy such as industrial cleaner, agricultural-produce packer, and hand-packager.  Tr. 686. Accordingly, the ALJ found Plaintiff was not disabled during the closed period from February 28, 2013, through August 27, 2018. Tr. 687.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) failed to provide legally sufficient reasons for rejecting Plaintiff's

subjective symptom testimony; (2) failed to provide legally

sufficient reasons for rejecting the medical opinion of Dr.

Julian, Plaintiff's treating physician; (3) failed to provide

legally sufficient reasons for rejecting the lay-witness

testimony of Mark L., Plaintiff's father, and David K.,

Plaintiff's partner, regarding Plaintiff's limitations; and

(4) failed to include all of Plaintiff's limitations in his

assessment of Plaintiff's RFC at Step Five.

## I.   **The ALJ provided legally sufficient reasons for discounting Plaintiff's testimony.**

Plaintiff contends the ALJ erred when he failed to provide

legally sufficient reasons supported by substantial evidence in

the record for rejecting Plaintiff's subjective symptom

testimony regarding his spinal condition and mental-health

issues.

### A.   **Standards**

The ALJ engages in a two-step analysis to determine

whether a claimant's testimony regarding subjective pain or

symptoms is credible.  "First, the ALJ must determine whether

the claimant has presented objective medical evidence of an

underlying impairment 'which could reasonably be expected to

produce the pain or other symptoms alleged.'"  *Garrison v.*

*Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter*

*v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The
claimant need not show her "impairment could reasonably be
expected to cause the severity of the symptom she has alleged;
she need only show that it could reasonably have caused some
degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting
*Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A
claimant is not required to produce "objective medical evidence
of the pain or fatigue itself, or the severity thereof."
*Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this
analysis and there is not any affirmative evidence of
malingering, "the ALJ can reject the claimant's testimony about
the severity of her symptoms only by offering specific, clear
and convincing reasons for doing so." *Garrison*, 759 F.3d at
1014-15.  *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,
883 (9th Cir. 2006)(same).  General assertions that the
claimant's testimony is not credible are insufficient.  *Parra v.
Astrue,* 481 F.3d 742, 750 (9th Cir. 2007).  The ALJ must
identify "what testimony is not credible and what evidence
undermines the claimant's complaints."  *Id*. (quoting *Lester v.
Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

B.    **Analysis**

Plaintiff testified the pain from his sciatica prevents him from sitting down.  Tr. 703.  Plaintiff described his pain as "acute" and testified he takes muscle relaxants and attempts physical therapy.  Tr. 995, 997.  Plaintiff also testified at his first hearing that his anxiety and bipolar disorder interfere with his ability to work.  Tr. 676.  The District Court summarized Plaintiff's testimony as follows:

> At the [initial] hearing, plaintiff testified he was first diagnosed with bipolar disorder in 2007.  He explained that, during 2008, his anxiety and bipolar disorder made things "tough," but that it "was a pretty up year."  By 2009, however, "things started to fall apart," at which point plaintiff focused on his medication management.  It was "very hard for him to show up on time" for his job at a fast-food restaurant, he "missed several days a week," and his supervisor "covered for [him] a lot."  In 2009, plaintiff received a medical marijuana card for migraines.  At various points throughout the relevant time period, plaintiff used marijuana between "five to seven" days per week, sometimes daily, to calm himself down when in a "manic state."
>
> Plaintiff testified that he last worked as a cashier at Bed Bath and Beyond in 2014.  He explained that he had difficulty maintaining attendance due to "stress around dealing with coworkers and dealing with customers."  He testified that he "would arrive at work and sit [in his] car for quite a while-to the tune of, like, a half-hour to an hour and just kind of go through [his] head, you know what happens if [he went] in?  What happens if [he didn't] go in?

> What [was he] going to have to deal with?"
> Although plaintiff's employer "worked with
> [plaintiff's] doctor" and allowed him to "go out
> on leave," he was ultimately terminated.
>
> During manic episodes, plaintiff was able to
> perform numerous household projects, such as
> painting and refinishing furniture; however, he
> had problems with his behavior, and became
> "extremely irritable" and had difficulty
> interacting with his son and partner.  He
> testified that during one two-month depressive
> period, he slept "a minimum" of 15 hours per day
> and had difficulty completing basic household
> chores.

Tr. 758-59 (citations to original record omitted).

    In the ALJ's opinion now before this Court the ALJ
concluded Plaintiff's statements concerning the intensity,
persistence, and limiting effects of his symptoms are
inconsistent with the medical evidence and other evidence in the
record.  Tr. 676.  For example, the ALJ noted Plaintiff was
diagnosed with lumbar strain in November 2017, but on
examination Plaintiff had intact strength and sensation.
Tr. 677, 981, 986.  An examination in January 2018 following
physical therapy showed Plaintiff had normal range of motion,
motor skills, strength, sensation, and straight leg-raise test.
Tr. 677, 1000.  Based on the record the ALJ concluded
Plaintiff's ongoing tenderness and spasms in his lumbar back
supported the ALJ's assessment of Plaintiff's RFC as limited to

medium work.  Tr. 677.

The ALJ also concluded Plaintiff's mental-status examinations, when viewed as a complete record, supported the ALJ's assessment of Plaintiff's RFC as to mental-health limitations.  Tr. 678.  For example, the ALJ cited numerous instances in the record that showed Plaintiff made good eye contact, had normal speech, had logical and linear thought processes, had intact memory, had fair and occasionally normal attention and concentration, was consistently cooperative and pleasant with providers, and had fair-to-good grooming and hygiene.  Tr. 678.  The ALJ noted Plaintiff had periods of increased symptoms, but the ALJ also pointed to records showing Plaintiff often had a normal or appropriate affect and was described as calm.  Tr. 678, 681.  In October 2014 Omar Reda, M.D., performed a psychiatric evaluation of Plaintiff.  Tr. 462-64, 678.  The ALJ noted Dr. Reda recommended an intensive outpatient treatment program, which Plaintiff did not attend because he did not believe he met the criteria and did not require such an acute level of care.  Tr. 473.

The ALJ also concluded Plaintiff's symptom testimony was inconsistent with the opinions of the state-agency psychological evaluators.  Tr. 681.  For example, in June 2014

Irmgard Friedburg, Ph.D., opined Plaintiff could concentrate sufficiently to carry out simple routine tasks and instructions, should not engage closely with the public, and could get along on a casual social basis with coworkers.  Tr. 85-86.  The ALJ concluded the state-agency psychological evaluators' opinions were consistent with the complete record.  Tr. 681.

The ALJ also found Plaintiff's activities of daily living were inconsistent with his symptom testimony.  Tr. 680. For example, Plaintiff was able to complete a college degree during the closed period and took many of his classes online while working part-time.  Tr. 464.  In addition, although Plaintiff's teenage son needed a lot of parental involvement, Plaintiff was able to care for him while Plaintiff's partner was out of town.  Tr. 465.

On this record the Court concludes the ALJ provided legally sufficient reasons supported by substantial evidence in the record for discounting Plaintiff's subjective symptom testimony.

**II.  The ALJ did not err in his assessment of Dr. Julian's medical opinion.**

Plaintiff contends the ALJ failed to provide clear and convincing reasons for discounting Dr. Julian's opinion.

**A.     Standards**

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability - the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  "In conjunction with the relevant regulations, [courts] have . . . developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.*  When contradicted, a treating or examining physician's opinion is still owed deference and will often be "entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007).  An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick,* 157 F.3d at 725.  "The ALJ must do more than state conclusions.  He must set forth his

own interpretations and explain why they, rather than the
doctors', are correct." *Id.* (citation omitted).

    **B.  Analysis**

      On September 17, 2013, Dr. Julian conducted an initial
psychiatric assessment of Plaintiff for evaluation and
management of bipolar disorder.  Tr. 394.  On March 31, 2016,
Dr. Julian completed a Mental Impairment Questionnaire.
Tr. 662-65.  In the Questionnaire Dr. Julian noted he had
treated Plaintiff monthly since September 2013.  Tr. 662.
Dr. Julian reported Plaintiff had a history of three episodes of
decompensation within 12 months, each of which lasted at least
two weeks.  Tr. 665.  Dr. Julian concluded Plaintiff was
extremely limited in his ability to maintain regular attendance,
to get along with coworkers, and to complete an eight-hour
workday without additional rest periods.  Tr. 664.  He further
found Plaintiff was markedly limited in his ability to remember
procedures, to maintain attention for two-hour segments, and to
perform work without becoming distracted.  Tr. 664.  Dr. Julian
also concluded Plaintiff's impairments would cause him to be
absent from work more than four times a month.  Tr. 665.

      Magistrate Judge You previously found the ALJ properly
discounted Dr. Julian's opinion that Plaintiff experienced

multiple episodes of decompensation on the ground that
Dr. Julian's opinion was inconsistent with his treatment notes.
Tr. 772.  Magistrate Judge You, however, concluded the ALJ
failed to provide legally sufficient reasons for rejecting the
remainder of Dr. Julian's opinion and remanded the matter for
the ALJ to re-evaluate Dr. Julian's opinion.  Tr. 773.
Plaintiff continues to assert the ALJ has not provided legally
sufficient reasons for rejecting Dr. Julian's opinion.

On remand the ALJ gave Dr. Julian's March 2016 opinion
"little weight" on the grounds that it was "contradictory" and
inconsistent with the medical record.  Tr. 682.  For example,
Dr. Julian indicated there was not any evidence of drug use by
Plaintiff.  Tr. 663.  The ALJ, however, noted in March 2015
Plaintiff acknowledged to his therapist that he was dependent on
marijuana, that he was "unable to make it a week without using,"
that it "might play a role" in his symptoms, and that Dr. Julian
had advised him to stop using it.  Tr. 891.  On March 1, 2016,
during a psychiatric evaluation, Plaintiff admitted to Cecille
Reuther, M.D., that he used marijuana daily "for migraine."
Tr. 624.  Dr. Reuther assessed Plaintiff as having substance-
abuse issues that "are a contributing factor to [his] current
psychiatric condition."  Tr. 630.  Based on Plaintiff's own

20 - OPINION AND ORDER

testimony regarding the extent of his marijuana use and the various medical providers in the record who assessed marijuana abuse, Magistrate Judge You also noted there was "serious doubt" as to whether Plaintiff is disabled.  Tr. 781.  Although Plaintiff argues Dr. Julian "clearly understood the situation" because he treated Plaintiff monthly, it is proper for the ALJ to consider such an inconsistency when evaluating the weight of a medical opinion.  *See* 20 C.F.R. §§ 404.1527(c)4), 416.927(c)(4).

The ALJ also pointed to other specific evidence in the record that was inconsistent with Dr. Julian's opinion. Tr. 682.  For example, Dr. Julian opined Plaintiff would have marked difficulty remembering procedures and moderate difficulty in understanding and remembering simple instructions.  Tr. 664. The ALJ, however, pointed to evidence in the record that Plaintiff was able to follow a three-step verbal command, had general normal thought processes and memory, was able to drive, and successfully completed his college degree.  Tr. 682-83. Dr. Julian also opined Plaintiff would have extreme limitations in getting along with coworkers.  Tr. 664.  The ALJ, however, pointed to evidence in the record that Plaintiff made good eye contact and was consistently cooperative with providers.

Tr. 683.

On this record the Court concludes the ALJ did not err when she discounted Dr. Julian's opinion because the ALJ provided legally sufficient reasons supported by inferences reasonably drawn from the record and by substantial evidence in the record.

## III. The ALJ did not err when he discounted the lay-witness testimony.

Plaintiff contends the ALJ failed to assess correctly the lay-witness testimony of Mark L., Plaintiff's father, and David K., Plaintiff's partner.

### A.  Standards

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006).  Germane reasons for discrediting a lay-witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant.  *Bayliss v. Barnhart*, 427

F.3d 1211, 1218 (9th Cir. 2005).  *See also Williams v. Astrue*,
493 F. App'x 866 (9th Cir. 2012).

     **B.    Analysis**

          On April 12, 2014, Mark L., Plaintiff's father,
submitted a Third-Party Function report.  Tr. 257-64.  He stated
it was "impossible" for Plaintiff to maintain a job and that
Plaintiff passed out without warning, had a "hard time" with his
personal care, did not drive, and rarely left the house.  *Id.*

          The ALJ gave "little weight" to Mark L.'s statement on
the ground that it was inconsistent with the medical evidence
and other evidence in the record.  Tr. 684-85.  For example, the
ALJ noted Plaintiff had not reported any episodes of vasovagal
syncope since January 2013.  Tr. 418, 684.  Although the ALJ may
not reject lay-witness testimony because it is not based on
objective medical evidence (*Bruce v. Astrue*, 557 F.3d 1113, 1116
(9th Cir. 2009)), "inconsistency with the medical evidence" is a
germane reason for discounting lay statements.  *Bayliss v.
Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  In addition, the
ALJ pointed to evidence in the record that Plaintiff's grooming
and hygiene were generally fair-to-good, he drove regularly, he
shopped for groceries, and he was able to complete his college
degree.  Tr. 685.


23 - OPINION AND ORDER

On April 5, 2016, David K., Plaintiff's partner, submitted a letter detailing Plaintiff's struggle to maintain employment due to his depressive and manic symptoms.  Tr. 330-34.

The ALJ gave "some weight" to David K.'s statements and concluded David K.'s description of Plaintiff's poor judgment, difficulty concentrating, and difficulty finishing tasks was accounted for in the ALJ's assessment of Plaintiff's RFC by limiting Plaintiff to simple, routine tasks.  Tr. 685. The ALJ, however, also noted David K.'s statements "do not align with the record."  Tr. 685.  The ALJ specifically noted although David K. stated Plaintiff was not capable of sticking with something for an extended period, Plaintiff was able to finish getting his college degree and had maintained a job for over a year at the time of the September 2019 hearing.  Tr. 685.

On this record the Court concludes the ALJ did not err when he discounted the lay-witness testimony of Plaintiff's father and partner because the ALJ provided germane reasons for doing so.

**IV.  The ALJ did not err in his assessment of Plaintiff's RFC.**

Plaintiff contends the ALJ erred when he failed to include in his assessment of Plaintiff's RFC the limitations set out in

Plaintiff's testimony and Dr. Julian's opinion.

As noted, the Court has determined the ALJ provided legally sufficient reasons for discounting Plaintiff's subjective complaints about his symptom; properly evaluated the medical evidence, including Dr. Julian's opinion; and provided germane reasons for discounting the lay-witness testimony of Plaintiff's father and Plaintiff's partner.  Accordingly, the Court concludes the ALJ did not err when he did not include the limitations based on such testimony in his assessment of Plaintiff's RFC and in his hypothetical posed to the VE.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 3rd day of February, 2021.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge

25 - OPINION AND ORDER